| | | |
|---|---|---|
| **TWAYNE ABDUL** | * | **NO. 2023-C-0494** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **TOURO INFIRMARY &** | * | |
| **HEBREW BENEVOLENT** | | **FOURTH CIRCUIT** |
| **ASSOCIATION AND ABC** | * | |
| **INSURANCE COMPANY** | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

ON SUPERVISORY WRIT FROM THE
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-06023, DIVISION "E"
Honorable Omar Mason, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge
Nakisha Ervin-Knott)

Christopher R. Schwartz
Schwartz Law Firm, LLC
2901 N. Causeway Blvd., Suite 204
Metairie, Louisiana 70002

      COUNSEL FOR PLAINTIFF/RESPONDENT

Brett M. Dupuy
Jean Paul Morrell
Middleberg Riddle Group
909 Poydras Street, Suite 1400
New Orleans, Louisiana 70112

      COUNSEL FOR DEFENDANT/RELATOR

                    **WRIT GRANTED**
                    **OCTOBER 5, 2023**

Relator, Touro Infirmary & Hebrew Benevolent Association ("Touro"), seeks review of the district court's judgment, which denied its motion for summary judgment and found that Touro was not Respondent's, Twayne Abdul ("Ms. Abdul"), statutory employer pursuant to the Management Agreement between Touro and Central Parking System of Louisiana, Inc. ("Central Parking"), Ms. Abdul's direct employer. For the reasons outlined below, we grant Touro's writ application, and find that there is no genuine issue of material fact as to Touro's status as Ms. Abdul's statutory employer, and dismiss Ms. Abdul's tort claim against Touro, reserving Ms. Abdul's right to pursue her claims against Touro in accordance with the Louisiana Workers' Compensation Act ("LWCA").

## FACTS AND PROCEDURAL HISTORY

On October 29, 2019, Ms. Abdul was working for Central Parking as a parking garage cashier when allegedly she suffered injuries to the right side of her body after the metal door to the cashier's booth fell off of its track and struck her. At the time of this accident, the property was owned by Touro. On May 4, 2009, Touro and Central Parking entered into a Management Agreement, wherein Central Parking agreed to operate Touro's parking garage to meet the needs of

1

Touro's hospital operation, maintain workers' compensation insurance and pay the related premiums in exchange for a monetary fee.

As a result of her accident, Ms. Abdul filed a workers' compensation claim against her direct employer, Central Parking. Afterwards, on August 26, 2020, Ms. Abdul filed a tort suit against Touro, alleging that Touro failed to exercise reasonable care as the owner of the parking garage.

On March 23, 2023, Touro filed a motion for summary judgment, in which it asserted that Ms. Abdul was a statutory employee of Touro; therefore, her exclusive remedy against Touro was limited to workers' compensation, as provided for in the LWCA. To support this argument, Touro attached the following exhibits: (1) Ms. Abdul's petition for damages; (2) the deposition of Ms. Abdul; (3) the deposition and affidavit of Greg Barker, Vice President of Operations at Touro; and (4) the Management Agreement between Touro and Central Parking, which stated that Touro would be the statutory employer of all of Central Parking's employees. Touro further argued that based on its status as a statutory employer, pursuant to La. R.S. 23:1061(A)(3)[1], there was a rebuttable presumption that Touro was Ms. Abdul's statutory employer at the time of her alleged injury. This presumption shifted the burden to Ms. Abdul to prove that she and Central Parking were not performing work that was an integral part of or essential to the ability of Touro to generate its goods, products, or services.

In response, Ms. Abdul opposed the motion for summary judgment, arguing that Touro could not use the statutory employer defense because it failed to properly raise the affirmative defense in its answer. Ms. Abdul further argued that the parking garage was not an integral part of Touro's hospital operations because

---

[1] *See infra* note 3.

the parking garage does not directly involve the delivery of medical services, thus, Touro was not her statutory employer.

In its reply memorandum, Touro maintained that it sought and received leave of court to amend its answer and filed a supplemental and amended answer to petition for damages on May 2, 2023, to cure the issue of whether it properly raised its statutory immunity. Touro reurged its argument that when the burden shifted to Ms. Abdul, she failed to rebut the presumption of a statutory employer relationship between Touro and the Central Parking's employees.

At the May 19, 2023 hearing on the motion for summary judgment, the district court, relying upon the holding in *Prejean v. Maintenance Enterprises, Inc.*, found that the statutory employer provision of the Management Agreement was invalid.[2] It is from this judgment that Touro seeks review.

## DISCUSSION

Touro contends that the district court erred in invalidating the statutory employer provision in the contract between Touro and Central Parking and subsequently denying its motion for summary judgment when the evidence established that Ms. Abdul failed to rebut the presumption of statutory employment. We find that this argument has merit.

A motion for summary judgment will be granted "[a]fter an opportunity for adequate discovery, … if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "Nevertheless, if the mover will

---

[2] *Prejean v. Maintenance Enterprises, Inc.,* 08-0364 (La. App. 4 Cir. 3/25/09), 8 So.3d 766; *see* full discussion *infra* p. 7.

not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"Louisiana Revised Statutes 23:1031 provides for workers' compensation benefits to an employee who is injured by an accident 'arising out of' and 'in the course of' his employment." *Fox v. Shaw Grp.*, 12-329, p. 3 (La. App. 3 Cir. 11/28/12), 106 So.3d 200, 203 (citing *Smith v. Continental Casualty Company*, 98-2896 (La. App. 1 Cir. 2/18/00), 752 So.2d 381). When "[a] principal [is] held to be a statutory employer, and thus liable to pay workers' compensation to an employee of a contractor he engages[,] . . . [w]orkers' compensation is the exclusive remedy of the contractor's employee . . . and the principal is immune from tort liability." *Id.* at pp. 3-4, 106 So.3d at 203 (citing La. R.S. 23:1032).

"The issue of statutory employment status is a mixed question of law and fact." *Dominio v. Folger Coffee Co.*, 09-1278, p. 10 (La. App. 4 Cir. 2/10/10), 32 So.3d 955, 961 (citing WILLIAM E. CRAWFORD, TORT LAW, 12 LOUISIANA CIVIL LAW TREATISE § 27:51 (2d ed. 2009)). "The doctrine of 'statutory employer' is also codified in [La. R.S.] 23:1061, and was amended in 1997 to provide that when a valid written contract recognizes the existence of a statutory employer relationship, a rebuttable presumption of a statutory relationship is

created." *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 09-1420, p. 5 (La. App. 4 Cir. 5/19/10), 40 So.3d 365, 369 (citing La. R.S. 23:1061(A)(3)) [3].

With these precepts in mind, we turn to the Management Agreement between Touro and Central Parking. Specifically, Section 20 of the Management Agreement provides:

> [Touro] and [Central Parking] agree that, during the term of this Agreement, all personnel employed by [Central Parking] to operate the Parking Facility shall be solely the employees of [Central Parking] and shall have no contractual relationship with [Touro]. Notwithstanding the foregoing, and solely for purposes of complying with the Louisiana Workers' Compensation Act (La. R.S. section 23:1021, et seq.) (the "LWCA"), [Touro] and [Central Parking] agree that (i) [Touro] is the statutory employer of those [Central Parking] employees providing services to [Touro] under this Agreement . . . in accordance with La. R.S. section 23:1061; (ii) all work and services performed by [Central Parking] and its employees are an integral part of and are essential to the ability of [Touro] to operate its business; (iii) the rights and remedies of such employees and their dependents against [Touro] on account of an injury, or compensable sickness or disease for which they may be entitled to compensation under the LWCA, shall be limited to the rights and remedies granted in La. R.S. section 23:1032; and (iv) this Section is included in this Agreement

---

[3] La. R.S. 23:1061(A) provides, in pertinent part:

A. (1) [W]hen any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him . . . . For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

* * *

(3) [A] statutory employer relationship shall not exist between the principal and the contractor's employees . . . unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

for the sole purpose of establishing a statutory employer relationship to gain the benefits expressed in La. R.S. section 23:1032, La. R.S. section 23:1061 and other provisions of the LWCA and is not intended to create an employer/employee relationship for any other purpose.

In denying Touro's motion for summary judgment, the district court held that "the statutory employer provision of the [Management Agreement] was invalid as the Court found in the *Prejean* case" because "the language [was] improperly trying to reap the benefits of the tort immunity while at the same time not incurring . . . the direct obligations with the purported statutory employee." However, we find that the case *sub judice* is distinguishable from *Prejean*. In *Prejean*, this Court affirmed the district court's application of La. R.S. 23:1061 and provided:

> [W]e conclude that the provision of the contract which purports to confer tort immunity to Murphy Oil while modifying, and even renouncing, the unconditional obligation of solidary liability to Mr. Prejean is invalid. Because Murphy Oil did not accept unconditionally, implicitly or explicitly, the *obligation* of a statutory employer, it cannot obtain the *benefit* of a statutory employer, which is tort immunity. In order for a *contract* to validly confer the status of *statutory* employer upon a principal, its terms and conditions cannot relieve a party of the *statutory* obligations which arise from such status unless the Legislature explicitly provides otherwise.

*Prejean*, 08-0364, p. 16 (La. App. 4 Cir. 3/25/09), 8 So.3d 766, 776 (emphasis in original).

Unlike *Prejean*, here, based on the explicit references to the LWCA statutes in section 20 of the Management Agreement, it is clear that Touro and Central Parking entered into this agreement to establish a statutory employer regime—in which both parties agreed to be liable jointly and *in solido* to pay workers' compensation benefits, and to limit Central Parking's employees' rights and remedies for compensable damages against Touro to compensation pursuant to the

6

LWCA. Further, the requirement for Central Parking to maintain workers' compensation insurance cannot be interpreted as an attempt by Touro to limit its obligations to pay workers' compensation benefits.

As this Court held in *Prejean*, "[n]either a direct employer nor a statutory employer may, as to the injured worker, *contract* away its solidary obligation: 'No contract, rule, regulation, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.'" *Id.* at pp. 12-13, 8 So.3d at 774 (quoting La. R.S. 23:1033) (emphasis in original). However, "none of this precludes either the statutory employer or the direct employer from contracting as between themselves rights of contribution or indemnification." *Id.* at p. 13, 8 So.3d at 774 (citing La. R.S. 23:1031(B) and 1063(A)). Thus, Central Parking's requirement to pay workers' compensation insurance premiums under the Management Agreement does not invalidate the provision establishing a statutory employer relationship. For these reasons, we find that the district court erred in invalidating the statutory employer provision of the Management Agreement and instead recognize the existence of a statutory employer relationship between Touro and Central Parking.

Having found that the Management Agreement is valid, the burden now shifts to Ms. Abdul to rebut the presumption of Touro's statutory employer status by demonstrating that the work she was performing at the time she sustained her injuries was not an integral part of or essential to Touro's ability to generate its goods, products, or services.

In the district court, Ms. Abdul argued that the parking garage was not an essential component of Touro's hospital operation because it is "simply a facility that provides parking space for patients, visitors, and hospital staff" and it is not

"directly involved in the delivery of medical services." Ms. Abdul also argued that because the garage is not an essential component of Touro's hospital operation, Touro cannot be her statutory employer.

However, this Court has previously rejected a similar argument in *Ramos*:

> [I]n *Jackson v. St. Paul Ins. Co.*, 04-0026, p. 8 (La. App. 1 Cir. 12/17/04); 897 So.2d 684, 689, the Louisiana First Circuit noted, after reviewing the history of the statutory employer doctrine, that the legislature has specifically rejected a restrictive analysis in favor of a more liberal interpretation of the words "integral" and "essential." And, in recent years, Louisiana courts have frequently found that certain work which is ancillary to the statutory employer's operations is nevertheless essential to the ability of the statutory employer's operations. *See Johnson v. Tennessee Gas Pipeline Co.*, 99 F.Supp.2d 755 (E.D. La. 2000) (finding that contractor's work of performing catering services onboard an oil and gas compressor facility was integral and essential to the statutory employer's ability to operate its oil and gas compressor facility); *Applegarth v. Transamerican Refining Corp.*, 00-1547 (La. App. 5 Cir. 2/28/01); 781 So.2d 804, *writ denied*, 01-0834 (La. 5/11/01); 792 So.2d 738 (La. 2001) (upholding summary judgment where contractor performed construction at a refinery where the refinery was not engaged in providing construction services); *Oliver v. Day Zimmermann*, 05-3072, 2006 WL 508047 (E.D. La. 2006) (holding that the provision of security services at an oil refinery was essential to the refinery's operations).

*Ramos v. Tulane Univ. of Louisiana*, 06-0487, p. 5 (La. App. 4 Cir. 1/31/07), 951 So.2d 1267, 1270.

Under La. R.S. 23:1061(A)(1), "[w]ork shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." Touro operates a healthcare facility, including a hospital and clinic, along with other services. In conjunction with providing its medical services, Touro also provides parking for its patients, its doctors and nurses, employees, other staff, and for the public. The Management Agreement makes clear that

8

Central Parking is to "operate the parking garage in a manner consistent with satisfying as efficiently as possible, the parking demands generated by [Touro] and its facilities." Accessible and dedicated parking is an essential part of Touro's ability to provide service and care for its patients. Review of the record shows that Ms. Abdul has not offered any evidence to demonstrate that the parking garage is not essential to Touro's ability to service and care for its patients. Consequently, Ms. Abdul has failed to rebut the presumption of the statutory employment created by statute and under the terms of the Management Agreement.

Based on the foregoing, we grant Touro's writ application, and find that there is no genuine issue of material fact as to Touro's status as Ms. Abdul's statutory employer, and dismiss Ms. Abdul's tort claim against Touro, reserving Ms. Abdul's right to pursue her claims against Touro in accordance with the LWCA.

**WRIT GRANTED**

9